**WILLIAM A. BIRDWELL**, OSB #730298
billbirdwell@dwt.com
**RANDY L. GAINER,** WSB #11823, *pro hac vice*
randygainer@dwt.com
**SCOTT E. WARNICK**, OSB #054954
scottwarnick@dwt.com
**ALAN J. GALLOWAY**, OSB #083290
alangalloway@dwt.com
DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon  97201-5630
Telephone:  (503) 241-2300
Facsimile:  (503) 778-5299

Of attorneys for Defendant, iovation Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KOUNT, INC., a Delaware corporation,<br><br>       Plaintiff,<br><br>v.<br><br>IOVATION INC., a Delaware corporation,<br><br>       Defendant. | Case No. CV-09-00255-HA<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT** |

## TABLE OF CONTENTS

I.    Introduction ...................................................................................................................1

II.    Statement of Facts .......................................................................................................2

    A.  The iovation Service ............................................................................................2

    B.  The `871 Patent and the Kount Process ..............................................................3

III.    Legal Standard for Summary Judgment .....................................................................7

IV.    Argument ....................................................................................................................8

    A.  Infringement of a Patent Claim Requires Both that the Infringing Process Fall Within the Scope of the Claim and that the Accused Party Engage in an Act of Direct or Indirect Infringement ...........................................................................................................8

    B.  The Legal Standard for Direct Infringement Requires a Single Party to Perform, Direct, or Control Each Step of a Claimed Process .....................................................................9

    C.  iovation Does Not Engage in Any Act of Direct Infringement Because it Does Not Perform, Direct, or Control Every Step of Any Claimed Process...................................10

       1.   iovation cannot perform the Merchant Steps. .............................................10

       2.   iovation does not direct or control performance of the Merchant Steps.......................11

           a.   iovation does not direct or control performance of the Merchant Steps under any traditional principle of vicarious liability .................................................12

           b.   iovation is not a "mastermind" that contracts out steps to another entity ................13

               (1)  "Contracting out" the steps of a patented process requires more than a contractual relationship .........................................................................................13

               (2)  Where the fundamental agreement is for the provision of a service, the incidental performance of required steps does not show "contracting out," direction, or control ...........................................................................................14

    D.  iovation Does Not Engage in Any Act of Indirect Infringement .....................................19

       1.   There can be no indirect infringement without direct infringement............................19

       2.   Kount has not alleged any direct infringement by iovation's merchant customers or merchant web site's visitors......................................................................................19

           a.   iovation's merchant customers do not direct or control performance of the Archiver Steps by iovation .....................................................................................20

           b.   The merchant's web site visitors do not direct or control either the Merchant Steps or the Archiver Steps ..................................................................................21

    E.  There Are no Genuine Issues of Material Fact Precluding Summary Judgment of Noninfringement ...........................................................................................................21

V.    Conclusion ..................................................................................................................24

Page i – Memorandum in Support of Defendant's Motion for Summary Judgment

# TABLE OF AUTHORITIES

Cases

Akamai Technologies, Inc. v. Limelight Networks, Inc.,
  2009 WL 1164570 (D.Mass. April 24, 2009) ............................................................ passim
Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ....................................................................... 8, 23, 24, 25
Ashcroft v. Iqbal,
  No. 07–1015, 556 U.S. ___ (2009) ................................................ 11, 21, 22, 23
BMC Resources, Inc. v. Paymentech, L.P.,
  498 F.3d 1373 (Fed. Cir. 2007) ..................................................................... 8, 23
Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ............................................................................................ 7
Cross Medical Prods. v. Medtronic Sofamor Danek,
  424 F.3d 1293 (Fed. Cir. 2005) ........................................................................ 13
Dynacore Holdings Corp. v. U.S. Philips Corp.,
  363 F.3d 1263 (Fed. Cir. 2004) ............................................................... 9, 20, 25
Emtel, Inc. v. Lipidlabs, Inc.
  583 F.Supp.2d 811 (S.D. Tex. 2008) ................................................................. 14
epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.,
  492 F.Supp.2d 608 (E.D.Tex. 2007) ................................................................. 13
Global Patent Holdings, LLC v. Panthers BRHC LLC,
  586 F.Supp.2d 1331 (S.D.Fla. 2008) ................................................................. 22
In re Van Geuns,
  988 F.2d 1181 (Fed. Cir. 1993) ................................................................... passim
May v. Chicago Ins. Co.,
  260 Or. 285 (1971) ......................................................................... 19, 24, 25
Muniauction.com v. Thomson Corp.,
  532 F.3d 1318 (Fed. Cir. 2008) ................................................................... passim
Novartis Corp. v. Ben Venue Labs.,
  271 F.3d 1043 (Fed. Cir. 2001) .......................................................................... 7
NTP, Inc. v. Research in Motion,
  418 F.3d 1282 (Fed. Cir. 2005) ........................................................................ 10
Rotec Industries, Inc. v. Mitsubishi Corp.,
  215 F.3d 1246 (Fed. Cir. 2000) ........................................................................ 23
Warner-Jenkinson Corp. v. Hilton Davis Corp.,
  520 U.S. 17 (1997) ............................................................................................ 10
Wilson Sporting Goods Co. v. David Geoffrey & Assocs.,
  904 F.2d 677 (Fed. Cir. 1990) ............................................................................ 9

Statutes

35 U.S.C. § 271 ................................................................................... 2, 9, 10

Other Authorities

Donald Chisum, Chisum on Patents, § 16.06 ........................................................ 12
Muniauction, Brief of Plaintiff-Appellee Muniauction, Inc., 2007 WL 4693007 ....... 16
Restatement Third, Agency § 1.01 ................................................................. 13, 14
Restatement Third, Agency § 7.03 ........................................................................ 13

DWT 12934617v11 0086500-000014          DAVIS WRIGHT TREMAINE LLP
                                         1300 S.W. Fifth Avenue · Suite 2300
                                         Portland, Oregon  97201 · (503) 241-2300

## I.    INTRODUCTION

Kount, Inc. ("Kount") sued iovation Inc. ("iovation") for allegedly infringing several process, or "method,"[1] claims of U.S. Patent No. 7,330,871 (the "Kount patent" or "'871 patent").  Infringement of a process claim requires both that (1) the allegedly infringing process fall within the scope of the claim, and that (2) the accused party has engaged in an act of infringement.  Although the iovation technology does not fall within the scope of any claim of the '871 patent, this motion only addresses the fact that iovation does not perform any act of infringement.

Direct infringement of a process claim requires that a *single* entity perform, direct, or control each and every step of the claimed process.  Each claim asserted in the Kount patent recites steps performed by at least two distinct entities: an "archiver" that performs most steps ("the Archiver Steps") and a "merchant web site" that performs three steps included in each of the claims ("the Merchant Steps").  Unless iovation performs, directs, or controls each and every step—including the Merchant Steps—it cannot directly infringe the Kount patent claims.

iovation does not perform, direct, or control the Merchant Steps.  First, iovation does not perform those steps.  Kount does not and could not contend that iovation is itself a "merchant" that operates a "merchant web site."  Second, iovation neither directs nor controls its merchant customers who could perform the Merchant Steps.  The terms of iovation's arms-length contracts demonstrate that iovation is not vicariously liable for its customers' acts under traditional principles, and that iovation is not simply contracting out steps it would otherwise perform to its customers.  Therefore, iovation does not direct or control the Merchant Steps.  As a matter of law, because iovation neither performs, directs, or controls the Merchant Steps, iovation is not liable for direct infringement.

---

[1] 35 U.S.C. § 101 provides that a patent may be obtained on a "process," but the term "method" is also commonly used to describe a process invention.  The claims of the '871 patent use the two terms interchangeably.

Page 1 – Memorandum in Support of Defendant's Motion for Summary Judgment

While the Patent Act also prohibits indirect infringement—active inducement under 35 U.S.C. § 271(b) or contributory infringement under § 271(c)—the case law is clear that without direct infringement there can be no indirect infringement. Therefore, unless a merchant or a visitor to the merchant's web site (the "web site visitor") performs, directs, or controls each and every step of a claimed process there can be no indirect infringement by iovation. However, the terms of iovation's contracts show that iovation's merchant customers do not perform, direct, or control performance of the Archiver Steps by iovation. Similarly, there is no basis to claim that web site visitors—who have no relationship with iovation at all—direct or control iovation and the merchant customers.

Because there can be no *direct* infringement by iovation, and there can be no *indirect* infringement by iovation because there is no allegation or evidence of direct infringement by iovation's merchant customers or the web site visitors, iovation is entitled to a judgment of non-infringement as a matter of law. Therefore, iovation respectfully asks the Court to grant its motion for summary judgment and to dismiss Kount's Complaint with prejudice.

## II.    STATEMENT OF FACTS

### A.    The iovation Service

iovation provides a service to help its online merchant customers reduce their exposure to Internet fraud. Criminals who commit Internet fraud can be difficult to identify because they hide behind multiple usernames or accounts, use different Internet connections, and modify the configurations of their computers to evade detection. By disguising and changing their online identities, these criminals can repeatedly target and defraud online merchants and other Internet sites.

iovation protects its customers through a patented[2] process that manages reputation profiles of computers and other devices, such as PDAs and iPhones, that are used in Internet

---

[2] U.S. Patent No. 7,272,728, which is not at issue in this litigation.

Page 2 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

commerce. iovation captures characteristics of computers or other devices that visit merchant web sites. iovation stores these characteristics individually, so that it can analyze the characteristics independently or in combinations. If one of iovation's merchant customers reports that a certain computer has been used to commit fraud, iovation can warn merchants the next time the same computer logs-on to a web site. Because iovation obtains data from numerous merchant customers, evidence that a device has been used to commit fraud on one customer can be used to stop attempted fraud on another customer.

By storing the individual characteristics of computers and other devices, which can be analyzed in any combination, iovation's process is uniquely suited to detecting whether a computer that visits to a customer's web site is linked to past fraud—even if some characteristics of the "new" device are different. For example, if a criminal uses a stolen credit card on one iovation customer's site and later targets another iovation customer using the same computer but a different Internet connection (changing the computer's IP address), iovation's service can identify the computer as one that has one that has previously been used to commit fraud. Although one characteristic associated with the computer (the IP address) has changed, iovation can use other matching characteristics to recognize the device and thwart the criminal's second attempt at fraud. Even if the criminal makes multiple changes to his computer configuration, iovation can match key characteristics, individually or in combination, to recognize and stop the attempted fraud. Capturing a rich set of individual characteristics about each device allows iovation to learn, over time, which particular characteristics or combinations of characteristics are most useful in preventing fraud, which increases the effectiveness of iovation's service to its customers. This acquired expertise is critical to iovation's business success and is a closely guarded trade secret.

**B.    The `871 Patent and the Kount Process**

While the goals of Kount's patented process are similar to those of iovation's service, the process claimed in the Kount patent operates on a fundamentally different principle from the

Page 3 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

processes used by iovation. Although the Kount process also collects attributes of website visitors' computers, in the Kount process the fraud detection service (termed the "archiver service" in Kount's patent) does not store individual computer attributes. Rather, all the attributes are merged together into a single string of characters that is irreversibly converted, via a "hashing function," into a unitary "fingerprint" that is transmitted to the archiver service for storage. Kount patent, col. 4, lns. 33-52 (attached as Ex. A to Kount's Complaint). This unitary "fingerprint" approach fails to preserve individual attribute information. Because the hashing function is irreversible, the attributes cannot be unpacked from the "fingerprint." For any two computer "fingerprints," Kount's process offers no practicable means of ascertaining if the computers' attributes are almost identical or completely different. Rather, the process Kount claims would allow a criminal to make his or her computer appear "new" to the fraud detection service by making just a slight configuration change, placing merchants at risk of fraud and loss.

The Kount patent's all-or-nothing approach is ill-suited for identifying devices associated with Internet fraud for several reasons. First, the Kount approach does not allow for recognition based on a diverse set of information-rich attributes, some or all of which may evolve over time. Second, the Kount approach does not allow the system to vary the set of attributes collected, experiment with new attributes, or develop new recognition strategies based on analysis of existing device profiles. Kount's approach allows a criminal to conceal his machine's identity by changing just one collected attribute.

Despite the fundamental drawback of Kount's patented technology, Kount markets a fraud detection service that attempts to compete with iovation's. Given the obstacles facing Kount in competing with iovation's innovative technology, it is no coincidence that Kount filed this lawsuit against iovation on March 4, 2009, the eve of a major industry tradeshow, the Merchant Risk Council's annual eCommerce Payments and Risk Conference.

The `871 patent contains five independent process claims and seven dependent claims. All the independent claims recite processes that are identical except for the last element. Claim 1

Page 4 – Memorandum in Support of Defendant's Motion for Summary Judgment

is representative of the independent claims:

> 1. A process for use in identifying a *customer* computer involved in an online transaction via a *merchant* web site between a *customer* using a customer browser operating on said *customer* computer and a *merchant* who operates said *merchant* web site, in order to monitor for possible fraudulent transactions using the computer, said method comprising the steps of:

>> said *merchant* web site providing to said *customer* browser a redirect script request within a transaction form of said *merchant* web site, wherein said redirect script causes said *customer* browser to communicate to an *archiver* web site of a machine data archiving service an electronic request for a machine data collection script;

>> said *archiver* web site returning said machine data collection script to said *customer* browser along with a transaction identification string, wherein said machine data collection script causes said *customer* browser processing said machine data collection script to cause said *customer* browser to query said *customer* computer for a machine fingerprint of said customer computer, wherein said machine fingerprint comprises a hashed attribute string associated with one or more attributes of said *customer* computer, and wherein said machine data collection script causes said *customer* browser to communicate said machine fingerprint and said transaction identification string to said *archiver* web site, and said *archiver* web site storing said machine fingerprint and said transaction identification string in a machine data profile as an archiver record;

>> wherein said machine data collection script also causes said *customer* browser to write said transaction identification string into said transaction form;

>> said *merchant* web site receiving from said *customer* browser customer identification information with said transaction form to thereby comprise a transaction record, and storing the transaction record with the transaction identification string as a merchant record;

>> whereby said transaction identification string associates said transaction record with said machine fingerprint; and

>> monitoring for possible fraudulent transactions, wherein said monitoring is based at least in part on said machine fingerprint.

U.S. Patent No. 7,330,871, claim 1 (emphasis added). The claim language identifies three

Page 5 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

parties—a customer, a merchant, and an archiver. `871 patent, col. 3, lns. 18–19, 64 (describing invention as "three party process").[3]  More importantly, the claims recite steps that must be performed by at least two different parties—the merchant and the archiver.  For example, in the first step following the preamble, a merchant must provide a redirect script within a transaction form of the merchant's own web site.  In the subsequent step, the web site of a different actor— the archiver—must return a data collection script request to a customer browser along with a transaction identification string.  Each of the independent claims contains three identical steps that must be performed by a "merchant web site."[4]  These three "Merchant Steps" are:

> Merchant Step 1  said merchant web site providing to said customer browser a redirect script request within a transaction form of said merchant web site, wherein said redirect script causes said customer browser to communicate to an archiver web site of a machine data archiving service an electronic request for a machine data collection script;
>
> Merchant Step 2  said merchant web site receiving from said customer browser customer identification information with said transaction form to thereby comprise a transaction record,
>
> Merchant Step 3  and storing the transaction record with the transaction identification string as a merchant record;

Even assuming that iovation's service makes it an "archiver," and that iovation performs

---

[3] Perhaps the steps could theoretically be performed by a single "merchant" entity that acted as its own "archiver," with the "customer" remaining a separate party. `871 patent, col. 3 lns. 15– 18, 23–41 (discussing "two party process" and "two party embodiment").  Such a  possibility is irrelevant to this case, however, because there is no allegation, or basis to allege, that iovation is anything but a separate entity with respect to iovation's merchant customers.  That is, Kount does not and could not seriously contend that iovation is both an "archiver" and a "merchant" that operates a "merchant web site."

[4] `871 patent, claims 1, 9, 10, 11 and 12.  All of the other claims are dependent claims which inherit the same three required steps from their respective independent claims.

Page 6 – Memorandum in Support of Defendant's Motion for Summary Judgment

the Archiver Steps,[5] any direct infringement of the `871 patent by iovation depends on the actions of "merchants" distinct from iovation.  Because iovation does not perform the Merchant Steps itself, iovation could directly infringe only if iovation directs or controls merchants that do so.  As explained below, under applicable legal standards, iovation neither directs nor controls merchants that perform the steps.  Rather, due to the language of the Kount patent claims and undisputed facts concerning the arms-length contracts between iovation and its customers, iovation's accused services do not result in direct infringement by any single entity and, therefore, Kount's infringement claims fail as a matter of law.

## III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by pointing out an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  In a patent infringement case, "[s]ince the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of non-infringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

Once the moving party meets its initial burden, the burden shifts to the nonmoving party to present specific facts from which a jury, drawing all inferences in favor of the non-moving party, could reasonably find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  Once the initial burden is met, the non-moving party cannot simply

---

[5] Although iovation does not, in fact, even perform all the Archiver Steps, iovation does not rely on that fact in its present motion for summary judgment.

Page 7 – Memorandum in Support of Defendant's Motion for Summary Judgment

rest on its pleadings or offer conclusory denials, but must set forth specific facts to show that a genuine issue of fact exists. Fed. R. Civ. P. 56(e).  Demonstrating a genuine issue of material fact requires showing more than a mere metaphysical doubt or the existence of a mere scintilla of evidence.  *Celotex,* 477 U.S. at 322-24; *Anderson,* 477 U.S. at 251-52.  A factual dispute is not *genuine* unless competing fact claims require trial for resolution.  *Anderson*, 477 U.S. at 249-250 (emphasis added).  Moreover, a fact is not *material* unless, under the governing law, it might affect the outcome of the suit.  *Id.* at 248 (emphasis added).

## IV.    ARGUMENT

### A.    Infringement of a Patent Claim Requires Both that the Infringing Process Fall Within the Scope of the Claim and that the Accused Party Engage in an Act of Direct or Indirect Infringement

35 U.S.C. § 112, second paragraph, states:

> The specification [of a patent application] shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

35 U.S.C. § 112.  Accordingly, the "claims define the invention." *In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993).  To infringe a process claim, that is, to fall within the scope of a process claim, the allegedly infringing technology must employ each and every step of the claimed process as set forth in the claim.  *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380 (Fed. Cir. 2007)

35 U.S.C. § 271 sets forth required acts for both direct and indirect infringement.  35 U.S.C. § 271(a)-(c).  Section 271(a) states the required acts for direct infringement:

> Except as otherwise provided in this title, whoever without authority *makes*, *uses*, *offers to sell*, or *sells* any patented invention, within the United States, *or imports* into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a) (2006) (emphasis added).  Under the statutory framework, direct infringement of a process or method claim requires an infringing act of "practicing the patented

Page 8 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

method." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed.Cir.1993).

The statute also sets forth required acts for *indirect* infringement, that is, infringement based on another's *directly* infringing acts.  Section 271(b) creates liability for active inducement of another's direct infringement.  35 U.S.C. 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").  271(c) creates contributory liability for a defendant that "offers to sell or sells" certain components, materials, or apparatuses that are used to directly infringe a patent and lack substantial non-infringing uses.  35 U.S.C. § 271(c) (2006).  Under both §§ 271(b) and (c), indirect infringement is *impossible* without an underlying act of direct infringement.  *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004).  These sections of 35 U.S.C. § 271 exclusively define the acts of infringement relating to a process claim.[6]

In all patent cases, the burden is on the plaintiff to prove infringement.  *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685 (Fed. Cir. 1990).  Therefore, to prevail in this case, Kount must show not only that iovation employs technology that falls within the scope of a Kount patent claim, but that iovation engages in infringing acts with respect to that technology.  This Kount cannot do.

**B.     The Legal Standard for Direct Infringement Requires a Single Party to Perform, Direct, or Control Each Step of a Claimed Process**

Direct infringement of a process claim requires that a *single* party perform, direct, or control each and every step of the claimed process.  *Muniauction.com v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008).  The combined actions of more than one person cannot amount to direct infringement of a process claim unless a single "mastermind" directs or controls the party performing all the steps it does not perform itself.  *BMC*, 498 F.3d at 1379-80;

---

[6] 35 U.S.C. §§ 271(e)-(g) provide for infringement in specialized contexts not at issue here.

Page 9 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

*Muniauction*, 532 F.3d at 1329; *see also NTP, Inc. v. Research in Motion*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005) (holding process claims not infringed because one step was not performed within the United States).

The single party requirement derives from 35 U.S.C. § 271(a). *BMC*, 498 F.3d at 1380 ("[L]iability for infringement requires a party to make, use, sell, or offer to sell the patented invention, meaning the *entire patented invention*.") (emphasis added). Under the statute, "[i]nfringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention. *BMC*, 498 F.3d at 1380 (citing *Warner-Jenkinson Corp. v. Hilton Davis Corp.*, 520 U.S. 17, 40 (1997)). For process claims, infringement generally requires that a single party performs all of the steps of the process. *See BMC*, 498 F.3d at 1378.

In limited circumstances, direct infringement may be found although no single party performs every step of a claimed process itself. *Muniauction*, 532 F.3d. at 1329. Specifically, "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed *only* if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" *Muniauction*, 532 F.3d at 1329 (emphasis added).

### C.    iovation Does Not Engage in Any Act of Direct Infringement Because it Does Not Perform, Direct, or Control Every Step of Any Claimed Process

Under the strict standard of *Muniauction*, there can be no direct infringement by iovation unless iovation performs, directs, or controls each and every step of the claimed processes—including the Merchant Steps. There is no infringement here because iovation neither performs the Merchant Steps itself nor directs or controls performance of the steps by its customers.

#### 1.    iovation cannot perform the Merchant Steps.

The plain language of the claims requires three steps to be performed by a "merchant"

DWT 12934617v11 0086500-000014                    DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

that operates a "merchant web site." `871 patent, claims 1, 9, 10, 11 and 12.[7]  There is no dispute

that iovation is not a "merchant" that operates a "merchant web site."  Kount's Complaint bases

its infringement claims on services that iovation provides to merchants, namely

"ReputationManager, Device Reputation Authority, and/or ReputationShield."  Complaint, ¶ 16.

Kount does not claim that iovation itself is a merchant that operates a "merchant web site," *id.*,

nor could it allege sufficient facts to make such a claim plausible.  Declaration of Doug Shafer in

Support of Defendant's Motion for Summary Judgment of Noninfringement ("Shafer

Declaration"), ¶ 16; *see Ashcroft v. Iqbal*, No. 07–1015, 556 U.S. ___, slip op. at 14 (2009)

(holding that complaint must contain sufficient facts to state a claim that is plausible on its face).

Therefore, iovation cannot itself perform the Merchant Steps.

### 2.    iovation does not direct or control performance of the Merchant Steps

Under *BMC* and *Muniauction*, there is no direction or control unless either (1) the

accused infringer would be vicariously liable for steps performed by another party under

traditional principles, or (2) the accused infringer acts as a "mastermind" that "simply . . .

contract[s] out steps of a patented process to another entity."  *See Muniauction*, 532 F.3d at 1330

(finding that the defendant neither "had another party perform steps on its behalf," nor could it

be vicariously liable under any identified legal theory); *BMC*, 498 F.3d at 1379, 1381

(recognizing infringement where the defendant merely "has someone else carry out one or more

of the claimed steps on its behalf," and applying principles of vicarious liability).  Here, as

explained below, there is no direction or control under either of these tests because iovation (1) is

not liable for the actions of its merchant customers under traditional principles of vicarious

liability, and (2) does not "contract out" steps for merchant customers to perform on its behalf.

---

[7] `871 patent, cl. 1, col. 11, lns. 25 – 32, 52 – 56; cl. 9, col. 12, lns. 38 – 44, 65 – 68, col. 13, lns. 1 – 2; cl. 10, col. 13, lns. 20 – 26, 46 – 50; cl. 11, col. 13, lns. 64 – 67; col. 14, lns. 1 – 3, 24 – 28; cl. 12, col. 14, lns. 46 – 53, col. 15, lns. 6 – 10.

Page 11 – Memorandum in Support of Defendant's Motion for Summary Judgment

       a.       **iovation does not direct or control performance of the Merchant Steps under any traditional principle of vicarious liability**

    *Muniauction* states that "the control or direction standard is satisfied . . . where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party." 532 F.3d at 1330.  This reflects longstanding principles under which a principal may be liable for the acts of an agent or servant.  *See* Donald Chisum, *Chisum on Patents*, § 16.06[1] (noting vicarious liability of corporations for acts of a servant or agent).  Under common law principles, vicarious liability is based upon agency relationships.  "Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  Restatement Third, Agency § 1.01 (2005).  A principal is vicariously liable for torts committed by its agents within the scope of authority or employment.  *Id*. at § 7.03.  Vicarious liability for infringement exists where a relationship is so close that the accused infringer, "through its connections with the entity performing only part of the process, is in actuality performing the combination of each and every step of the claimed method."  *epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*  492 F. Supp. 2d 608, 628 (E.D. Tex. 2007).  "This is a rather strict standard, contemplating almost an alter ego and certainly not a mere customer relationship."  Mark A. Lemley et al., *Divided Infringement Claims*, 33 AIPLA Q.J. 255, 260 (2005).

    In contrast, a party is not vicariously liable under traditional principles for the acts of non-agent customers or independent contractors.  *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, No. 06-11109, 2009 WL 1164570, at *23 (D. Mass. April 24, 2009); Lemley et al., *Divided Infringement Claims*, *supra*, at 281 (emphasizing that "merely a customer relationship" is insufficient to show agency).  Such relationships are insufficient even where the defendant provides instruction or training.  *Muniauction*, 532 F.3d 1329-30 (holding that a jury

Page 12 – Memorandum in Support of Defendant's Motion for Summary Judgment

question on defendant's teaching, instructing, or facilitating was "irrelevant to whether *Thomson* satisfies the "control or direction" standard); *Cross Medical Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1311 (Fed. Cir. 2005) (despite apparent instructions by Medtronic representatives to surgeons, Medtronic did not infringe because it did not "itself make an anchor seat which contacts bone [as required by the claim,] and it does not perform surgery."); *Emtel, Inc. v. Lipidlabs, Inc.* 583 F. Supp. 2d 811, 839 (S.D. Tex. 2008) (holding that instruction, prompting, facilitation, and arranging for another party's involvement are insufficient to show direction or control).

Here, iovation is not vicariously liable for the acts of its merchant customers. There is no evidence that iovation's customers are agents of iovation. Rather, the contractual relationship is an "arms-length agreement" in which vicarious liability would not be imposed under any identifiable legal theory. *See Muniauction*, 532 F.3d at 1323, 1330; *Akamai*, 2009 WL 1164570 at *25. iovation's contracts with its customers show that iovation is a vendor hired to provide fraud prevention services to customers. *See, e.g.*, Shafer Declaration, Exs. 1 - 3. Such merchants act on their own behalf, not on behalf of iovation, as would be required for agency. *See* Restatement Third, Agency § 1.01 (2005); *see Muniauction*, 532 F.3d at 1323 (bidder for bonds was not an agent); *Akamai*, 2009 WL 1164570, at *26 (customer was acting to gain benefits of provider's service); *Cross Medical*, 424 F.3d at 1311 (surgeons desired to treat patient).

**b.  iovation is not a "mastermind" that contracts out steps to another entity**

**(1)  "Contracting out" the steps of a patented process requires more than a contractual relationship**

Although control or direction can be present where one party, the "mastermind," "simply . . . contract[s] out steps of a patented process to another entity," *BMC*, 498 F.3d at 1381, the law does not equate "contracting out" with the mere existence of a contract. *See Muniauction*, 532 F.3d at 1329 ("mere 'arms-length cooperation' will not give rise to direct infringement by any party."); *BMC Resources*, 498 F.3d at 1381 ("[T]he standard requiring control or direction

Page 13 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

for a finding of joint infringement may in some circumstances allow parties to enter into arms-length agreements to avoid infringement."); *Akamai*, 2009 WL 1164570, at *25 (finding non-infringement based on distinction between "a contract to perform steps of a patented process" and "a contract for services [where] the customer must perform one or more steps of the patented process in order to receive the benefits of those services"). Rather, the law recognizes a clear difference between a contract to perform steps of a patented process on a mastermind's behalf, on the one hand, and customer's arms-length contracts for services that incidentally require performance of claimed steps, on the other hand. *BMC Resources*, 498 F.3d at 1381. *Muniauction* and *Akamai* demonstrate that instructing customers as to steps that the customer is technically or contractually required to perform to receive a service does not show that the service provider "directs or controls" performance of those steps. *See Muniauction*, 532 F.3d at 1330 (no control over required steps); *Akamai*, 2009 WL 1164570, at *25 (same).

> **(2)    Where the fundamental agreement is for the provision of a service, the incidental performance of required steps does not show "contracting out," direction, or control**

There is no direction or control where a service provider incidentally requires a customer to perform certain steps to receive the service. *See Muniauction*, 532 F.3d at 1330; *Akamai*, 2009 WL 1164570, at *25. In *Muniauction*, the Federal Circuit held that no direction or control is shown where a customer contracts with a service provider that instructs the customer to perform certain steps – even if the service provider wields contractual leverage to enforce its instructions. *See Muniauction*, 532 F.3d at 1330. The plaintiff unsuccessfully argued that the accused infringer exercised contractual control over users of its service, citing evidence that users were "told how to use the software," that "bidders must follow Thomson's detailed instructions" to use the system and that Thomson could terminate users under the contract. Brief of Plaintiff-Appellee Muniauction, 2007 WL 4693007, at *48. Viewing the evidence in the light most favorable to the plaintiff, the Federal Circuit nonetheless held there was no infringement as

Page 14 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

a matter of law, in part because the bidders did not "perform steps on [the defendant's] behalf." *Muniauction*, 532 F.3d at 1330.

*Muniauction* also illustrates that giving information to a customer and requiring the customer to use it as instructed to gain the benefits of a service does not establish direction or control. In *Muniauction*, the accused auction service provider supplied a "bidder ID" and password to its customers, instructed the customers to use the ID and password, and required use of the ID and password to access the auction system. Brief of Plaintiff-Appellee Muniauction, Inc., 2007 WL 4693007, *12, *14 (explaining that the accused infringer Thomson "require[d] entry of a preassigned bidder ID and password," and that "[t]hroughout the auction process, Thomson instructs bidders and issuers what to do, using detailed screen shots and accompanying written explanations"). Nonetheless, the Federal Circuit found noninfringement as a matter of law, distinguishing between an arms-length contract for services and impermissible contracting out of claimed steps. *Muniauction*, 1329-30.

Here, Kount cannot establish direction or control of the Merchant Steps by iovation. Any instructions from iovation to its merchant customers, or steps required to use the iovation service, would fail to establish direction or control, just as such instructions and requirements failed to show direction and control in *Muniauction*.

Following *Muniauction*, *Akamai* illustrates that a contract under which a customer incidentally performs the steps of a patented process to gain the benefits of a service does not establish direction or control. As in this case, *Akamai* involved Internet services. Specifically, defendant Limelight's customers contracted with Limelight to provide Internet content delivery services, which sped up downloads by distributing content across geographically dispersed server clusters. *Akamai*, 2009 WL 1164570, at *2-3. A common step of the system and process claims at issue required action by Limelight's customers, namely serving web pages with modified URLs (or modified DNS entries) that contained information specified by Limelight. *Id.* at *2-3, 21. Since Limelight did not perform the steps of serving web pages or modifying the

Page 15 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

URLs itself, the issue was whether Limelight directed or controlled the customers' performance of these actions.  *Id*. at *20.

Once customers "sign[ed] Limelight's contract," they were "under a contractual obligation to . . . implement Limelight's content delivery method by serving pages that include a hostname supplied by Limelight to the customer."  *Id*. at *25 (quoting Akamai's Memorandum in Opposition to Limelight's Motion to Reconsider the Court's Denial of Limelight's Motion for Judgment as A Matter of Law ("Akamai's Brief"), 2008 WL 5354758, at 3-4). The non-moving party, Akamai, cited evidence that the contracts "*require* the customer to use Limelight's 'then current Company processes . . . to enable . . . Customer Content to be delivered by' Limelight and compel the customer to provide 'all cooperation . . . reasonably necessary for Company [Limelight] to implement its CDS [Content Distribution Service].'" Akamai's Brief, 2008 WL 5354758, at 3) (emphasis in original).

The *Akamai* court rejected the argument that contractual obligations to perform claimed steps demonstrated the required direction or control.  2009 WL 1164570, at *25.  Applying *Muniauction*, the court held that customer obligations to perform steps do not establish "direction or control," distinguishing such "incidental" obligations from the primary basis for the contracts:

> Akamai's argument—that direction or control is established by the existence of a contractual relationship in which one entity incidentally has to perform a step of a patented process to receive the benefits of the contract—runs counter to the Federal Circuit's holding that 'mere 'arms-length cooperation' will not give rise to direct infringement by any party.'

*Akamai*, 2009 WL 1164570, at *25 (citing *Muniauction,* 532 F.3d at 1329).  The *Akamai* court held that Limelight was entitled to judgment as a matter of law for lack of direct infringement, emphasizing that the difference between a contract in which infringers "contract[] out steps of a patented process to another entity" and cases where the "basis of the contract" or "fundamental agreement" between vendor and customer is "the provision of a service in exchange for payment."  *Id.* at *25.

Page 16 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

> [T]he existence . . . of a contract for services does not give rise to direction or control, even if the customer must perform one or more steps of the patented process in order to receive the benefits of those services.

*Id.* The *Akamai* court also made clear that where an agreement is fundamentally for services provided to a customer, the customer performs the claimed steps on its own behalf:

> Limelight's customers, following Limelight's instructions, do modify the embedded objects of their web pages or alter their DNS records so that requests for the objects resolve to the content delivery service domain, rather than the content provider domain, in order to take advantage of Limelight's service. However, this step is performed by Limelight's customers *not because they are contractually obligated to do so; rather, they do so because they wish to avail themselves of Limelight's service.* Under *Muniauction*, this is insufficient to establish the requisite direction or control by Limelight of its customers necessary to find it liable for direct infringement.

*Akamai*, 2009 WL 1164570, at *26 (emphasis added).

The *Akamai* decision is a careful application of the Federal Circuit's decision in *Muniauction*. Indeed, *Akamai* was a motion for reconsideration, and the strict standard clarified in *Muniauction* caused the judge to overturn his earlier denial of judgment as a matter of law. The "fundamental agreement" in each case supported an outcome of noninfringement. In *Muniauction*, the fundamental agreement was that Thomson provided its customers with the ability to bid on municipal bonds in exchange for a fee. *Muniauction*, 532 F.3d at 1321, 1329. While the bidders were incidentally obligated to use an ID and password issued by Thomson to log into the system, Thomson provided auction services in exchange for a financial payment, 532 F.3d at 1329, not in exchange for bidder's performance of the claimed step of "inputting data." 532 F.3d at 1322. Therefore, the defendant in *Muniauction*—similar to the defendant in *Akamai*—was not "simply . . . contracting out steps of a patented process to another entity." *BMC*, 498 F.3d at 1381. In each case, performance of the claimed step was merely an incidental requirement that allowed the customer to utilize the service that was the actual subject of the contract.

Page 17 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

Here, as in *Muniauction* and *Akamai*, undisputed contract evidence shows that iovation is a service provider with which customers enter into contracts for the provision of fraud prevention services.  *E.g.*, Shafer Declaration, ¶¶ 7 – 9, Exs. 1 – 3 (contract forms with standard terms and conditions).  iovation does not contract with its customers so that the customers, rather than iovation itself, will perform steps in iovation's processes.  *Id*.  The unambiguous language of iovation's agreements shows the fundamental agreement: merchants hire iovation to provide fraud prevention services in exchange for payment.  Shafer Declaration, Exs. 1 – 5.  The interpretation of these contracts is a matter of law for this court to determine.  *May v. Chicago Ins. Co*., 260 Or. 285, 292 (1971)  ("As a general rule, the construction of a contract is a question for the court and is treated as a matter of law.").

iovation's standard contract with its customers  includes only a typical provision obligating the customers to comply with "Software and Services instructions" and to comply with iovation's reasonable requests for information:

> 2.1    Client shall comply with any Software and Services instructions.  Client shall not copy, modify, reverse engineer, decompile or disassemble any part of the Software.  Client shall deliver any information reasonably required by iovation to perform the Services.

Shafer Declaration, Ex. 1, page 2 (standard Service Order with standard terms and conditions).

Any such instructions would be insufficient as a matter of law to establish direction and control because they would be incidental to the fundamental bargain between iovation and its customers, which is the agreement for iovation to provide services to its customers in exchange for payments from the customers.  *See, e.g., Akamai*, 2009 WL 1164570, at *25.  The same iovation contract requires iovation's customers to report software defects to iovation.  Shafer Declaration, Ex. 1, page 3, ¶ 5.1.  The contract, nonetheless, cannot be construed as one in which iovation "simply . . . contracts out" defect reporting to it customers.

Further, while iovation's merchants must use certain software components provided by iovation to utilize iovation's fraud prevention services, such as data collection scripts, such

Page 18 – Memorandum in Support of Defendant's Motion for Summary Judgment

requirements are incidental to the iovation-customer contracts and do not permit iovation to direct or control the merchants' conduct.  *See Muniauction*, 532 F.3d at 1329 (construing contract between accused infringer and its customers as an exchange auction services for fees); *Akamai*, 2009 WL 1164570, at *25 (holding that the accused infringer provided services in exchange for payments and incidentally performed a step in the process at issue, which was insufficient as a matter of law to establish infringement).  Just as the courts in *Muniauction* and *Akamai* held that such incidental performance of steps in a patented process was insufficient to establish infringement, any incidental performance of the Merchant Steps by iovation's customers cannot provide the basis to establish infringement by iovation.

### D.      iovation Does Not Engage in Any Act of Indirect Infringement

#### 1.      There can be no indirect infringement without direct infringement

"Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement."  *BMC*, 498 F.3d at 1379 (citing *Dynacore*, 363 F.3d at 1274).  In this case, there is no direct infringement by iovation for the reasons discussed above.  Nor, for the reasons explained below, could there be any direct infringement involving the accused iovation services by iovation's merchant customers or the visitors to those merchants' web sites.  Absent any plausible allegation of direct infringement, Kount's allegations of indirect infringement of the `871 claims fail as a matter of law and need not be considered by the Court.  *See* Lemley, *Divided Infringement, supra*, at 281 ("Courts need not even reach claims of contributory infringement or inducement if there is no entity directly infringing the claim.").

#### 2.      Kount has not alleged any direct infringement by iovation's merchant customers or merchant web site's visitors

Kount has made no allegation that, in using iovation's accused services, merchant customers perform every step of any Kount claim—including the Archiver Steps.  *See*

Page 19 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

Complaint, ¶ 16 – 17.  Nor has Kount alleged that visitors to merchants' web sites perform every step of any Kount claim.  *See id.*  In the absence of such factual allegations, any claim of direct infringement by the merchant customers must rely on merchants' direction or control of Archiver Steps allegedly performed by iovation.  *See Ashcroft*, slip op. at 14 (holding that complaint must contain sufficient facts to state a claim that is plausible on its face); *Muniauction*, 532 F.3d at 1329 (stating requirements for direct infringement).  Similarly, any claim of direct infringement by the web site visitors must rely on the visitors' direction or control of Archiver Steps allegedly performed by iovation plus Merchant Steps allegedly performed by merchants.  *See Muniauction*, 532 F.3d at 1329.  Since undisputed evidence shows that neither the merchant customers nor the web site visitors direct or control iovation, any such claim of direct infringement fails as a matter of law.

### a.    iovation's merchant customers do not direct or control performance of the Archiver Steps by iovation

Kount does not allege that iovation's merchant customers direct or control Archiver Steps performed by iovation, nor could it plausibly do so.  First, the merchants are not vicariously liable for any steps performed by iovation because iovation's contracts plainly show that the relationship between the parties is one of arms-length contractors.  Shafer Declaration, Exs. 1 – 3 (contracts evincing an arms-length relationship).  No evidence suggests that the merchants and iovation are in a principal-agent or master-servant relationship, nor that iovation is a mere alter ego of its merchant customers.  Second, iovation's customers do not "contract out" the performance of the steps performed by iovation.  iovation's contracts demonstrate that merchants pay iovation to provide a general service—fraud prevention—not to perform the specific steps of the `871 claims.  *See e.g.*, Shafer Declaration, Exs. 1 – 3 ("Service Order" contracts), Exs. 4 – 5 ("Service Level Agreements").  Indeed, Kount has not even claimed that merchants direct or control alleged performance of the Archiver Steps by iovation, and its pleadings contain no facts

Page 20 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

that would make such a claim plausible enough to survive dismissal.  Complaint, ¶¶ 16 – 17, *see Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F.Supp.2d 1331, 1335 (S.D. Fla. 2008) (plaintiff failed to allege direction or control sufficient to state a claim for direct infringement); *Ashcroft*, slip op. at 14 (holding that complaint must contain sufficient facts to state a claim that is plausible on its face).

> **b.    The merchant's web site visitors do not direct or control either the Merchant Steps or the Archiver Steps**

Finally, Kount does not allege that the web site visitor, the customer of the merchant web site, directs or controls either performance of the Archiver Steps by iovation or merchant's performance of the Merchant Steps.  The web site visitor cannot direct or control the Merchant Steps.  There can be no plausible contention that merchants are web site visitor's agents.  Nor could there be "contracting out."  Web site visitors might contract with merchants to buy goods, but not to prevent fraud (by the web site visitor!).   Similarly, the web site visitor cannot direct or control the Archiver Steps.  iovation has no contractual relationship with the web site visitor at all, Shafer Declaration, ¶ 15, and iovation acts not on the visitor's behalf, but to protect the merchant from the (possibly criminal) visitor.  Finally, Kount has not alleged that the web site users direct or control the Merchant Steps or the Archiver Steps, and its pleadings contain no facts that would make such a claim plausible enough to survive dismissal.  Complaint, ¶¶ 16 – 17, *see Global Patent Holdings LLC*, 586 F.Supp.2d at 1335 (dismissing infringement claims absent sufficient allegations of direction or control); *Ashcroft*, slip op. at 14 (holding that complaint must contain sufficient facts to state a claim that is plausible on its face).

> **E.    There Are no Genuine Issues of Material Fact Precluding Summary Judgment of Noninfringement**

There is no genuine issue of material fact here.  The failure of proof concerning an essential element of a plaintiff's claim necessarily renders all other facts immaterial and permits

Page 21 – Memorandum in Support of Defendant's Motion for Summary Judgment

entry of judgment for the defendant.  *Celotex,* 477 U.S. at 322-23; *Rotec Industries, Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed. Cir. 2000).  Under the governing patent law, the absence of a single party that performs, directs, or controls each and every step of the process claims amounts to a failure of an essential element of an infringement claim.  *BMC*, 498 F.3d at 1378-80 (holding that direct infringement requires performance of each step and that indirect infringement requires an underlying act of direct infringement);  *Anderson*, 477 U.S. at 249-50 (a fact is not *material* unless, under the governing law, it might change the outcome of the suit).

Kount's direct infringement claim against iovation fails as a matter of law because the undisputed facts show that iovation does not perform, direct, or control each and every step of Kount's asserted process claims.  The language of the claims renders indisputable that iovation does not perform the Merchant Steps itself.  *See* `871 patent, claims 1, 9, 10, 11 and 12 (describing steps performed by "merchant web site").[8]  Indeed, Kount alleges infringement based on iovation's ReputationManager, Device Reputation Authority, and ReputationShield services, and does not even allege that iovation is a "merchant" operating a "merchant web site."  Complaint, ¶¶ 16-17.  Thus, there cannot be any genuinely disputed issue of fact on whether iovation performs the steps itself.  *Anderson*, 477 U.S. at 249-250 (no *genuine* issue unless *competing* fact claims require trial for resolution).

The language of iovation's contracts with merchant customers establishes that iovation does not direct or control performance of the Merchant Steps.  *See* Shafer Declaration, Exs. 1 - 3 (arms-length agreements for provision of services); *Muniauction*, 532 at 1330; *Akamai*, 2009 WL 1164570, at *25 (no direction or control when customers are incidentally required to perform steps to receive services).  The interpretation of these unambiguous agreements is not a disputed issue of material fact, but a matter of law for this Court to decide.  *May*, 260 Or. at 292  (contract interpretation is generally a matter of law).

---

[8] `871 patent, cl. 1, col. 11, lns. 25 – 32, 52 – 56; cl. 9, col. 12, lns. 38 – 44, 65 – 68, col. 13, lns. 1 – 2; cl. 10, col. 13, lns. 20 – 26, 46 – 50; cl. 11, col. 13, lns. 64 – 67, col. 14, lns. 1 – 3, 24 – 28; cl. 12, col. 14, lns. 46 – 53, col. 15, lns. 6 – 10.

Page 22 – Memorandum in Support of Defendant's Motion for Summary Judgment

As a matter of contract law, the documents show an arms-length relationship between iovation and its customers that fails under either test of *Muniauction*, namely (1) traditional vicarious liability, or (2) "contracting out." First, an arms-length relationship, as opposed to an agency or alter ego relationship, is insufficient as a matter of law to establish control or direction. *Muniauction*, 532 F.3d at 1329. Second, even if iovation instructed its customers to perform each of the three Merchant Steps, which it does not, there is no dispute that the fundamental contractual agreement is for iovation to provide fraud prevention services, not for customers to perform claimed steps. *See* Shafer Declaration, Exs. 1 – 3 (arms-length agreements for provision of services). Any contractual obligation of the merchant customers to perform steps incidental to a contract for services cannot establish direction or control as a matter of law. *Akamai*, 2009 WL 1164570, at *25. In sum, because the plain language of the claims requires multiple actors and the plain language of the contracts shows arms-length agreements for the provision of services, there can be no direction or control—and therefore no direct infringement by iovation—as a matter of law. *See* Shafer Declaration, Exs. 1 – 5 (standard contracts and Service Level Agreements); *Muniauction*, 532 at 1330; *Akamai*, 2009 WL 1164570, at *25 (finding no direction or control as a matter of law).

Undisputed facts show that Kount's *indirect* infringement claims fail as a matter of law as well. Indirect infringement requires an underlying act of direct infringement. *Dynacore,* 363 F.3d at 1274. As above, there is no direct infringement by iovation. Moreover, there is no possibility of direct infringement by the merchants, as iovation's contracts negate any possibility that the merchants direct or control iovation's performance of steps under either a vicarious liability or "contracting out" theory. *See* Shafer Declaration, Exs. 1 – 5 (agreements); *see also May,* 260 Or. at 292 (contract interpretation is generally a matter of law). And there is no assertion—much less evidence—that iovation has any contractual or agency relationship with visitors to merchant customer web sites. *See* Complaint, ¶¶ 1 – 23. Therefore, there is no genuine issue of material fact with respect to direct infringement by any single party. *See*

Page 23 – Memorandum in Support of Defendant's Motion for Summary Judgment

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon  97201 · (503) 241-2300

*Anderson*, 477 U.S. at 249-250 (no *genuine* issue unless *competing* fact claims require trial for resolution).

As stated at the outset, Kount bears the burden of showing not only that iovation's process falls within the scope of the `871 claims, but also that there has been an act of infringement. Here, the plain terms of Kount's claims and iovation's contracts demonstrates a lack of direct infringement as a matter of law. The lack of a single entity not only negates an essential element of Kount's direct infringement claim, but amounts to failure of an essential element of its indirect infringement claim as well. *BMC*, 498 F.3d at 1379 ("Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement."). Because an essential element of Kount's infringement claims fails as a matter of law, any other factual disputes in this case are immaterial. *See Celotex,* 477 U.S. at 322-323 (failure of proof on an essential element renders other facts immaterial). Therefore, summary judgment is appropriate in this case because there is no genuine issue as to any material fact and iovation is entitled to judgment of law on noninfringement. Fed. R. Civ. P. 56(c).

## V.    CONCLUSION

For the foregoing reasons, iovation respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Kount's Complaint with prejudice.

DATED this 25th day of June, 2009.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By /s/ William A. Birdwell
    William A. Birdwell, OSB #730298
    Randy L. Gainer, WSB #11823, *pro hac vice*
    Scott E. Warnick, OSB #054954
    Alan J. Galloway, OSB #083290
    Telephone: (503) 241-2300
    Facsimile: (503) 778-5299

Of Attorneys for Defendant, iovation Inc.

Page 24 – Memorandum in Support of Defendant's Motion for Summary Judgment